Filed 6/30/15  P. v. Martin CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAWRENCE MARTIN,<br><br>    Defendant and Appellant. | H040617<br>(Santa Clara County<br>Super. Ct. No. 202487) |

## I.    INTRODUCTION

In 1998, defendant Lawrence Martin was convicted of possession of a concealed dirk or dagger (Pen. Code, § 12020, subds. (a), (c)(24))[1] and sentenced to an indeterminate term of 25 years to life for that offense because he was found to have suffered four prior felony convictions that qualified as "strikes" (§§ 667, subds. (b)-(i), 1170.12).  This court affirmed defendant's conviction and sentence in *People v. Martin* (July 28, 2000, H018961) [nonpub. opn.].[2]

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] On our own motion, we take judicial notice of our prior opinion.  (Evid. Code, § 452, subd. (d)(1).)

In 2013, defendant filed a petition for recall of sentence in the trial court, pursuant to section 1170.126. (See *id*., subd. (b).) Section 1170.126 was added by Proposition 36, the Three Strikes Reform Act of 2012 (hereafter, Reform Act). On January 16, 2014, the trial court denied the petition, finding that although defendant was eligible for resentencing, he posed an "unreasonable risk of danger to public safety" under section 1170.126, subdivision (f) (hereafter, section 1170.126(f)).

On appeal, defendant contends: (1) under principles of due process and the Sixth Amendment, he had the right to a jury trial and proof beyond a reasonable doubt on the issue of whether resentencing him would pose an unreasonable risk of danger to public safety; (2) if his trial attorney forfeited the first issue by failing to demand a jury trial, he received ineffective assistance of counsel; (3) remand is required because after the trial court denied his petition, the electorate changed the definition of "unreasonable risk of danger to public safety" as used in section 1170.126(f) by the enactment of section 1170.18, subdivision (c) (hereafter, section 1170.18(c)).

This court recently rejected similar claims in *People v. Lopez* (2015) 236 Cal.App.4th 518 (*Lopez*), and we follow that decision here. As we find no merit to defendant's claims, we will affirm the order denying defendant's petition for recall of sentence.

## II.    BACKGROUND

### A.    *Underlying Offenses and Strike Allegations*[3]

On September 18, 1997, at about 11:00 p.m., two San Jose State University Police Officers encountered defendant in the driveway of a San Jose apartment complex. Defendant agreed to speak with the officers and admitted he had a knife on him, showing

---

[3] The following summary is taken from *People v. Martin, supra,* H018961 [nonpub. opn.].

the officers a knife that was tucked into his jacket sleeve.  In his pants, defendant had a baggie containing 2.28 grams of marijuana and a glass pipe.

Defendant was subsequently convicted of possession of a concealed dirk or dagger (§ 12020, subds. (a), (c)(24)) and misdemeanor possession of marijuana (Health & Saf. Code, § 11357, subd. (b)).  The trial court found true allegations that defendant had suffered four prior felony convictions that qualified as "strikes" (§§ 667, subds. (b)-(i), 1170.12) and had served three prior prison terms (§ 667.5, subd. (b)).  The "strike" allegations were based on defendant's prior convictions of felony battery with infliction of great bodily injury, burglary of an inhabited dwelling house (two convictions), and attempted burglary of an inhabited dwelling house.

### B.    Sentencing and Appeal

At his sentencing hearing on August 11, 1998, defendant requested the trial court exercise its discretion to strike his "strikes" pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.  The trial court declined to do so, finding that "in light of the defendant's current and past crimes and the particulars of his background, character, and prospects," defendant did not fall "outside the spirit of the three strikes law."

The trial court sentenced defendant to an indeterminate term of 25 years to life for possession of a concealed dirk or dagger, with three consecutive one-year terms for the three prior prison term allegations, for an aggregate sentence of 28 years to life.  This court affirmed defendant's conviction and sentence in 2000.

### C.    Petition for Recall of Sentence

On January 15, 2013, defendant filed a petition for recall of sentence, requesting appointment of counsel and a finding that he was eligible for resentencing under the provisions of section 1170.126.  The trial court found that defendant "appear[ed]" to be eligible for resentencing, appointed counsel, and set a hearing.  In an order filed on

3

June 7, 2013, the trial court found that petitioner was in fact eligible for resentencing under section 1170.126, subdivision (e).[4]

The prosecution subsequently filed written opposition to defendant's petition for recall of sentence, in which it argued that defendant continued to pose an unreasonable risk of danger to public safety. (See § 1170.126(f).) The prosecution discussed defendant's criminal history, his prison disciplinary record, and statements defendant made to the probation officer at the time of sentencing. (See *id.*, subd. (g).[5])

In a written reply to the prosecution's opposition, defendant argued that he had the right to a jury trial on the question of whether he posed an unreasonable risk of danger to public safety. Defendant also argued that he presented a low risk of danger to public safety due to his age (he was 54 years old at the time) and the facts relating to his criminal history and prison disciplinary record.

A hearing on defendant's petition for recall of sentence was held on January 16, 2014. Defendant presented the testimony of an expert on California prison classifications, discipline, complaints, housing, and gangs. The expert testified about defendant's various disciplinary incidents, which included six serious rules violations

---

[4] The trial court rejected the prosecution's argument that defendant was ineligible for resentencing because he was "armed with a firearm or deadly weapon" in the commission of his felony offense. (See §§ 1170.126, subd. (e)(2); 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) The parties do not challenge this ruling on appeal.

[5] Section 1170.126, subdivision (g) provides: "In exercising its discretion in subdivision (f), the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."

between 2002 and 2012.  Several of defendant's disciplinary incidents involved violence, conduct that could lead to violence, or challenges to the authority of correctional officers.

The trial court explained that it was denying defendant's petition for recall of sentence because it found defendant continued to pose an unreasonable risk of danger to public safety.  (See § 1170.126(f).)  The trial court first discussed defendant's criminal history.  (See § 1170.126, subd. (g)(1).)  The trial court noted that defendant began "a criminal career" when he was 18 years old, that he had nine felony convictions (four of which were strikes), 17 misdemeanor convictions, three prison commitments, and three parole violations.  The trial court referred to the serious nature of defendant's burglary and felony battery convictions and the fact that some of his misdemeanor convictions involved assaultive conduct.

The trial court next discussed defendant's record of prison discipline, finding it "egregious."  (See § 1170.126, subd. (g)(2).)  The trial court found it significant that defendant had six serious rules violations and had committed a battery that resulted in serious bodily injury on another inmate.  The trial court indicated it had also considered efforts defendant had made to rehabilitate himself.  (See § 1170.126, subd. (g)(3).)  The trial court found it concerning that defendant had not yet accepted "responsibility and accountability" for his actions.

Ultimately, the trial court found that if defendant was released, he "could very well be a danger to this community."  The trial court therefore denied defendant's petition for recall of sentence.

### III.    DISCUSSION

#### A.    *The Three Strikes Reform Act*

This court recently described the Reform Act in *People v. Chubbuck* (2014) 231 Cal.App.4th 737 at pages 740-741:

5

"Under the 'Three Strikes' law as it existed prior to the Reform Act [citations], a defendant who had previously been convicted of two or more serious or violent felonies was subject to an indeterminate sentence of 25 years to life upon his or her conviction of *any* new felony. The Reform Act prospectively changed the Three Strikes law by reserving indeterminate life sentences for cases where the new offense is also a *serious or violent felony,* unless the prosecution pleads and proves an enumerated disqualifying factor. In all other cases, a recidivist defendant will be sentenced as a second strike offender, rather than a third strike offender. [Citations.]

"The Reform Act also created a ' "post-conviction release proceeding" ' whereby a Three Strikes prisoner who is serving an 'indeterminate life sentence' for a crime that was not a serious or violent felony—and who is not otherwise disqualified—may have his or her sentence recalled and be resentenced as a second strike offender, unless the court 'determines that resentencing . . . would pose an unreasonable risk of danger to public safety.' [Citations.]"

The Reform Act, which took effect on November 7, 2012, specifies that a petition for recall of sentence must be filed "within two years after the effective date of the act that added this section or at a later date upon a showing of good cause." (§ 1170.126, subd. (b); see Prop. 36, § 6, approved Nov. 6, 2012, eff. Nov. 7, 2012.)

### B.     *Right to a Jury Trial*

Defendant first contends that under principles of due process and the Sixth Amendment, he had the right to a jury trial and proof beyond a reasonable doubt on the issue of whether he would pose an unreasonable risk of danger to public safety if he was resentenced as a second-strike defendant. According to defendant, a true finding on the disqualifying factor provided by section 1170.126(f) (i.e., dangerousness) "results in the imposition of a sentence beyond that which could otherwise lawfully be imposed," and thus is "the functional equivalent of an element of an offense which must be found true

6

by a jury to the beyond a reasonable doubt standard" under *Apprendi v. New Jersey* (2000) 530 U.S. 466.

As defendant acknowledges, a similar claim was rejected in *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1286 (*Kaulick*).  (See also *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075-1076 [agreeing with *Kaulick*].)  Recently, in *Lopez*, we rejected the claim that *Kaulick* was " 'wrongly decided.' " (*Lopez, supra,* 236 Cal.App.4th at p. 523.)

In *Kaulick,* the defendant argued that the standard of proof applicable to the determination of dangerousness under section 1170.126(f) should be beyond a reasonable doubt, reasoning that "a finding of dangerousness is a factor which justifies enhancing a defendant's sentence beyond a statutorily presumed second strike sentence." (*Kaulick, supra,* 215 Cal.App.4th at p. 1301.)  The *Kaulick* defendant argued that once he was found eligible for resentencing under the Reform Act, he "was subject *only* to a second strike sentence, *unless* the prosecution established dangerousness."  (*Id.* at p. 1302.)

The *Kaulick* court held that under the Reform Act, a third strike indeterminate sentence is not effectively recalled upon a finding of eligibility, before the trial court determines whether dangerousness is established.  (*Kaulick, supra,* 215 Cal.App.4th at p. 1303.)  The court explained:  "[D]angerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all.  If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced."  (*Ibid.*, fn. omitted.)

*Kaulick* analogized to *Dillon v. United States* (2010) 560 U.S. 817 (*Dillon*), in which the United States Supreme Court held that "its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws.

7

[Citation.]" (*Kaulick, supra,* 215 Cal.App.4th at p. 1304.) In *Dillon,* the defendant had been sentenced under the federal sentencing Guidelines. Because the Guidelines were subsequently amended to provide for a lesser sentencing range for the defendant's offense, the defendant moved for a sentence reduction. The District Court reduced his sentence to a term at the bottom of the revised range, but the court found it did not have the authority to impose a below-Guidelines sentence. (*Dillon, supra,* at pp. 823-824.) The defendant characterized the sentence reduction process as resentencing proceedings implicating his Sixth Amendment right to a jury, but the Supreme Court characterized the proceedings as a " 'modif[ication of] a term of imprisonment,' " to which the Sixth Amendment did not apply. (*Id.* at p. 825.)

*Kaulick* applied the reasoning in *Dillon* to petitions for recall of sentence under section 1170.126. The *Kaulick* court observed that "[t]he retrospective part of the [Reform] Act is not constitutionally required, but an act of lenity on the part of the electorate," which provides only for a downward modification of a sentence, not "wholesale resentencing of eligible prisoners." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304.) As such, "[a]ny facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues." (*Id.* at p. 1305.)

We agree with *Kaulick*'s reasoning and conclusion. (See *Lopez, supra,* 236 Cal.App.4th at pp. 523-524.) We conclude that defendant did not have the right to a jury trial and proof beyond a reasonable doubt on the issue of whether he would pose an unreasonable risk of danger to public safety if he was resentenced as a second-strike defendant. (See § 1170.126(f).)[6]

---

[6] Because we have concluded that defendant had no right to a jury trial on the issue of dangerousness under section 1170.126(f), we need not address defendant's alternate claim that if his trial attorney forfeited that issue by failing to demand a jury trial, he received ineffective assistance of counsel.

### C. *Definition of Unreasonable Risk of Danger to Public Safety*

Defendant contends that remand is required because after the trial court denied his petition for recall of sentence, the electorate changed the definition of "unreasonable risk of danger to public safety" as used in section 1170.126(f), through the enactment of section 1170.18(c). This court rejected this argument in *Lopez, supra,* 236 Cal.App.4th at pages 527 to 529, and we adhere to the holding reached in that case.

On November 4, 2014, the voters enacted Proposition 47, the Safe Neighborhoods and Schools Act. (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014), eff. Nov. 5, 2014.) Proposition 47 reclassified certain felony drug and theft related offenses as misdemeanors and enacted a new statutory provision whereby a person serving a felony sentence for a reclassified offense can petition for a recall of his or her sentence. (§ 1170.18, subd. (a).) Similar to section 1170.126, newly-enacted section 1170.18 requires the trial court to determine whether "resentencing the petitioner would pose an unreasonable risk of danger to public safety" before imposing a misdemeanor sentence. (*Id.*, subd. (b).) Section 1170.18, subdivision (b) specifies that in determining whether the petitioner poses an "unreasonable risk of danger to public safety," the trial court is to consider the same three factors that a court considers in determining whether to resentence a petitioner under the Reform Act. (See § 1170.126, subd. (g).) But unlike section 1170.126, section 1170.18 provides a restrictive definition of "unreasonable risk of danger to public safety." Section 1170.18(c) reads: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

Section 667, subdivision (e)(2)(C)(iv) lists eight felonies or classes of felonies: "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code. [¶] (II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by

9

Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289. [¶] (III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288. [¶] (IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive. [¶] (V) Solicitation to commit murder as defined in Section 653f. [¶] (VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245. [¶] (VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418. [¶] (VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

Thus, it appears that under section 1170.18(c), the trial court can deny a petition for recall of sentence for an otherwise eligible petitioner only if it finds that the petitioner poses an " 'unreasonable risk of danger to public safety' " because there is "an unreasonable risk that the petitioner will commit" one of the above-enumerated violent felonies.

Defendant argues that section 1170.18(c)'s introductory clause—"As used throughout this Code"—means that its definition of "unreasonable risk of danger to public safety" applies whenever that phrase is used in the Penal Code. According to defendant, the section 1170.18(c) definition of "unreasonable risk of danger to public safety" is thus incorporated into section 1170.126 proceedings, such that a dangerousness finding under the section 1170.126(f) now requires that there is an unreasonable risk that a petitioner will commit one of the eight felonies or categories of felonies listed above. Defendant contends that a remand is warranted for the trial court to revisit its dangerousness inquiry in light of the new definition.

The People counter that section 1170.18(c)'s definition of "unreasonable risk of danger to public safety" applies only to petitioners seeking a recall of their sentence

10

under that initiative, and that even if the section 1170.18(c) definition of dangerousness does apply to petitions filed under section 1170.126, the new definition would not apply retroactively to defendant.[7]

Our review of this issue is governed by familiar principles of statutory construction, which are applicable to voter initiatives like the Reform Act. (See *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1034 (*Osuna*).) " ' "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]" ' [Citation.]" (*Ibid*.)

Although it is a "basic principle of statutory and constitutional construction . . . that courts, in construing a measure, not undertake to rewrite its unambiguous language," that rule need not be applied "when it appears clear that a word has been erroneously used, and a judicial correction will best carry out the intent of the adopting body. [Citation.]" (*People v. Skinner* (1985) 39 Cal.3d 765, 775.) Whether there is a drafting error "can only be determined by reference to the purpose of the section and the intent of the electorate in adopting it." (*Id.* at p. 776.)

In *Lopez*, this court concluded that "the word 'Code' was 'erroneously used' in section 1170.18, subdivision (c) rather than the word 'Act,' to refer to the [Safe Neighborhoods and Schools] Act," and that the error was therefore "properly subjected to 'judicial correction.' " (*Lopez, supra,* 236 Cal.App.4th at p. 527.) This court explained: "The 'purpose' of section 1170.18 and 'the intent of the electorate' in enacting it unambiguously demonstrate that the voters did not intend to alter the Reform Act or

---

[7] The California Supreme Court has granted review in several cases addressing these arguments. (*People v. Valencia* (2014) 232 Cal.App.4th 514, review granted February 18, 2015, S223825; *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted February 18, 2015, S223676; *People v. Payne* (2014) 232 Cal.App.4th 579, review granted March 25, 2015, S223856; *People v. Crockett* (2015) 234 Cal.App.4th 642, review granted May 13, 2015, S225198; see also *People v. Davis* (2015) 234 Cal.App.4th 1001, review granted June 10, 2015, S225603.)

section 1170.126 in any way or to require the resentencing of any person serving a sentence for a crime *other* than one of the specified nonserious, nonviolent property or drug crimes." (*Ibid.*)

This court provided three reasons for the conclusion in *Lopez* that the use of the word "Code" was a drafting error. First, we pointed out that "Proposition 47's ballot materials and proposed statutory language contained nothing whatsoever to suggest that Proposition 47 would have any impact on the resentencing of anyone who was serving a sentence for a crime *other* than one of the specified nonserious, nonviolent property or drug crimes." (*Lopez, supra,* 236 Cal.App.4th at pp. 527-528.) This court observed that "the only hint" of such a possible consequence "was the use of the word 'Code' rather than 'Act' in an obscure subdivision of the lengthy proposed act" and that the Proposition 47 ballot materials had "repeatedly emphasized" that the resentencing provisions "were *limited* to *only* those persons serving sentences for the specified nonserious, nonviolent property or drug crimes."[8] (*Lopez, supra,* at p. 528.) In light of these facts, this court found it "inconceivable that voters intended for subdivision (c) of section 1170.18 to severely restrict the ability of a court to reject a resentencing petition under the Reform

---

[8] The Legislative Analyst wrote in the Voter Information Guide that Proposition 47 was intended to reduce penalties for "certain nonserious and nonviolent property and drug offenses from wobblers or felonies to misdemeanors," and identified those crimes as "Grand Theft," "Shoplifting," "Receiving Stolen Property," "Writing Bad Checks," "Check Forgery," and "Drug Possession." (Voter Information Guide, Gen. Elect. (Nov. 4, 2014) analysis by the Legislative Analyst, pp. 35-36.) The analysis explained that the initiative "allows offenders currently serving felony sentences *for the above crimes* to apply to have their felony sentences reduced to misdemeanor sentences," and that "a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime." (*Id*. at p. 36, italics added; see *Osuna, supra,* 225 Cal.App.4th at p. 1034 [analyses and arguments in official ballot pamphlet are indicia of voters' intent].)

Act by a person convicted of crimes *other* than one of the specified property or drug crimes and whom the court considered dangerous." (*Ibid.*)

Second, this court observed that "the timing of Proposition 47 makes an intent to alter the Reform Act illogical." (*Lopez, supra,* 236 Cal.App.4th at p. 528.) Under section 1170.126, subdivision (b), petitions for recall of sentence were required to be filed within two years of the date the Reform Act was enacted, except upon a showing of good cause. The Reform Act became effective on November 7, 2012 (Prop. 36, § 6, as approved by voters, Gen. Elec. (Nov. 6, 2012), eff. Nov. 7, 2012) and thus petitions for recall of sentence were required to have been filed by November 7, 2014, which was only two days after the effective date of Proposition 47. It would be irrational for the voters who enacted Proposition 47 in 2014 to intend to change the definition of dangerousness that applied to petitions filed under the Reform Act, since there were only two more days in the filing window. At that point, "nearly all [Reform Act] petitions would already have been filed and most of them adjudicated." (*Lopez, supra,* at p. 528.)

Third, this court reasoned that "the structure and content of section 1170.18 is inconsistent with an intent to apply section 1170.18, subdivision (c)'s definition throughout the entire Penal Code." (*Lopez, supra,* 236 Cal.App.4th at p. 528.) This court noted that section 1170.18 specifies that " '[n]othing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling *within the purview of this act.*' (§ 1170.18, subd. (n), italics added.)" (*Lopez, supra*, at p. 528.) This court reasoned that "[a]pplying section 1170.18, subdivision (c)'s definition throughout the Penal Code would necessarily 'diminish or abrogate the finality of judgments' in cases, like those subject to the Reform Act, that do not fall 'within the purview of' Proposition 47." (*Ibid.*) This court pointed out that a petition under the Reform Act "seeks to abrogate the finality of a Three Strikes judgment in a case that does not involve one of the specified nonserious, nonviolent property or drug crimes." (*Lopez, supra,* at p. 528.) This court further concluded that "the wording of section 1170.18,

13

subdivision (c) is itself inconsistent with an intent to apply it 'throughout' the entire Penal Code." (*Lopez, supra,* at p. 528.)  This court noted that the statute "refers to 'petitioners' and defines a phrase that appears in only two sections of the Penal Code, section 1170.18 and section 1170.126." (*Ibid.*)  This court observed that "[i]f the voters had intended to apply this definition to Reform Act petitions, this phrasing would have been the most roundabout means of doing so." (*Ibid.*)  This court declined to "ascribe such unreasonable conduct to the voters," particularly "[s]ince the ballot materials made no mention of the Reform Act." (*Ibid.*)

We adhere to *Lopez* and conclude that section 1170.18(c) contains a drafting error that must be judicially corrected.  "The word 'Code' must be read as 'Act.' " (*Lopez, supra,* 236 Cal.App.4th at p. 529.)  Therefore, the definition of "unreasonable risk of danger to public safety" in section 1170.18(c) does not apply to the phrase "unreasonable risk of danger to public safety" as used in section 1170.126(f).

## IV.    DISPOSITION

The order denying defendant's petition for recall of sentence is affirmed.

14

_____

BAMATTRE-MANOUKIAN, ACTING P. J.

I CONCUR:

_____

MIHARA, J.

***People v. Martin***
**H040617**

Márquez, J., Concurring.

I agree defendant was not entitled to a jury trial and proof beyond a reasonable doubt on whether he would pose an unreasonable risk of danger to public safety. Like my colleagues, I agree with the reasoning in *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279 (*Kaulick*) that a finding under the Three Strikes Reform Act of 2012 (the Reform Act) that a defendant poses an unreasonable risk of danger to public safety does not *enhance* a defendant's sentence. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1303.) Instead, such a finding makes a defendant ineligible for resentencing under the Reform Act such that he or she "simply finishes out the term to which he or she was originally sentenced." (*Ibid.*) Because the original sentence is not enhanced, the right to a jury trial is not implicated.

But I respectfully disagree with the majority's conclusion that Proposition 47 " 'contains a drafting error that must be judicially corrected.' " (Maj. opn., p. 14, citing *People v. Lopez* (2015) 236 Cal.App.4th 518, 529 (*Lopez*).) The majority finds the drafting error in the phrase: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (Pen. Code, § 1170.18, subd. (c).)

In my view, the plain text of that voter-enacted language makes the definition of the term "unreasonable risk of danger to public safety" applicable wherever it is used "throughout" the Penal Code. The majority concludes the drafters meant to use the word "Act" instead of "Code" (Maj. opn., p. 14), but that reading would render superfluous the term "throughout" in the statutory phrase. The term "unreasonable risk of danger to public safety" is used only twice in the Penal Code—once in the Reform Act, and once in Proposition 47. The drafters would not have used the prefatory phrase "As used throughout" to refer to a single use within the Act. I believe the drafters intended to

apply the definition wherever that term is "used throughout" the Penal Code, including its use in the Reform Act.

The majority notes the absence of ballot materials and other indicia of legislative intent indicating the term was intended to apply to the Reform Act. (Maj. opn., p. 12.) But there is no need to resort to the ballot materials or other extrinsic sources where the plain language is clear. In my view, where the plain language at issue is consistent with the voters' intent to reduce punishments for certain crimes, regardless of whether punishments are reduced through recall petitions under the Reform Act or Proposition 47. Whether the voters' enactment of this language is sound public policy is beyond the reach of the judiciary—particularly here, where the voters enacted language explicitly limiting judicial discretion.

If the policy embodied in the statutory language at issue requires some alteration, that reform should be undertaken by the Legislature and the Governor. Proposition 47 "may be amended by a two-thirds vote of the members of each house of the Legislature and signed by the Governor so long as the amendments are consistent with and further the intent of this act." (Stats. 2014, p. A-20, Prop. 47, § 15.) An explicit purpose and intent of Proposition 47 is to "[r]equire a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (Stats. 2014, p. A-13, Prop. 47, § 3, subd. 5.) Thus, there is no doubt the Legislature and the Governor could amend Proposition 47 to address safety-related policy concerns that may arise from the definitional language. I would leave it to the other branches of government to make any such changes to the voter-enacted statute.

Although I disagree with the majority's analysis of Proposition 47, even if the definitional language therein applies to the Reform Act, I would conclude the definition does not apply retroactively to this case. It is well-established that statutes apply prospectively. (*People v. Brown* (2012) 54 Cal.4th 314, 319-324.) Although *In re*

2

*Estrada* (1965) 63 Cal.2d 740 and its progeny recognize a limited exception for statutes that reduce the punishment for a particular crime, the definitional language of Proposition 47 does not reduce the punishment for a particular crime, and there is no indication anywhere within Proposition 47 that the definitional language is to be applied retroactively.

Here, the trial court denied defendant's petition on January 16, 2014, more than ten months before Proposition 47 was passed by the voters. Because I would conclude the definitional language took effect when Proposition 47 became effective on November 4, 2014, I concur with the majority that the order denying defendant's petition for recall should be affirmed.

_____
Márquez, J.

People v. Martin
H040617