Filed 11/18/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID CHUBBUCK,<br><br>Defendant and Appellant. | H040388<br>(Monterey County<br>Super. Ct. No. SM980600) |

## I.  INTRODUCTION

In 1999, defendant David Chubbuck was convicted of solicitation to commit assault with a deadly weapon (Pen. Code, § 653f, subd. (a)).[1]  The trial court found true two "strike" allegations (§ 1170.12) and sentenced defendant to a term of 25 years to life. This court affirmed defendant's conviction and sentence in 2001.  (*People v. Chubbuck* (Jan. 30, 2001, H020514) [nonpub. opn.].)

In 2013, defendant filed a petition for resentencing in the trial court, pursuant to section 1170.126, subdivision (b).  The trial court denied defendant's petition, finding that he was ineligible for resentencing under section 1170.126, subdivision (e)(2) because "[d]uring the commission of" the solicitation offense, defendant "intended to cause great bodily injury to another person."  (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

On appeal, defendant contends the trial court erred by denying his petition for resentencing because the prosecution never pleaded and proved that he intended to cause great bodily injury during the commission of the solicitation offense.  We disagree that a pleading and proof requirement applies to the disqualification factors referenced in section 1170.126, subdivision (e)(2), and we will therefore affirm the trial court's order denying defendant's petition.

## II.    BACKGROUND

### A.    *The Three Strikes Reform Act of 2012*

On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012 (hereafter, "Reform Act"), which amended sections 667 and 1170.12 and added section 1170.126.  The Reform Act changes the requirements for sentencing a third strike offender to a prison term of 25 years to life.  (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167 (*Yearwood* ).)

Under the Three Strikes law as it existed prior to the Reform Act (former §§ 667, subds. (b)-(i); 1170.12), a defendant who had previously been convicted of two or more serious or violent felonies was subject to an indeterminate sentence of 25 years to life upon his or her conviction of *any* new felony.  The Reform Act prospectively changed the Three Strikes law by reserving indeterminate life sentences for cases where the new offense is also a *serious or violent felony,* unless the prosecution pleads and proves an enumerated disqualifying factor.  In all other cases, a recidivist defendant will be sentenced as a second strike offender, rather than a third strike offender.  (*Yearwood, supra,* 213 Cal.App.4th at pp. 167-168; *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1286.)

The Reform Act also created a " 'post-conviction release proceeding' " whereby a Three Strikes prisoner who is serving an "indeterminate life sentence" for a crime that was not a serious or violent felony—and who is not otherwise disqualified—may have

2

his or her sentence recalled and be resentenced as a second strike offender, unless the court "determines that resentencing . . . would pose an unreasonable risk of danger to public safety." (§ 1170.126, subds. (a), (f), (m); *Yearwood, supra,* 213 Cal.App.4th at p. 168.)

Under section 1170.126, subdivision (e)(2), a prisoner is not eligible for resentencing under the Reform Act if his or her current sentence was imposed for "any of the offenses appearing in" section 667, subdivision (e)(2)(C)(i)-(iii) or section 1170.12, subdivision (c)(2)(C)(i)-(iii). Section 667, subdivision (e)(2)(C)(iii) and section 1170.12, subdivision (c)(2)(C)(iii) both provide: "During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, *or intended to cause great bodily injury to another person*." (Italics added.)

Section 1170.126, subdivision (f) specifies the procedures for a resentencing eligibility determination: "Upon receiving a petition for recall of sentence under this section, the court shall determine whether the petitioner satisfies the criteria in subdivision (e). If the petitioner satisfies the criteria in subdivision (e), the petitioner shall be resentenced pursuant to paragraph (1) of subdivision (e) of Section 667 and paragraph (1) of subdivision (c) of Section 1170.12 unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."

### B.    *Defendant's Offense, Conviction, and Sentence*

The following summary is taken from our unpublished opinion in *People v. Chubbuck*, No. H020514 (Jan. 30, 2001):

"In the spring of 1998, defendant was in jail because of burglary charges. He sent letters to his ex-wife, Carie C., about once per day. The letters became threatening. In one letter, defendant told Carie that he had 'a plan that will place your life on hold for many years.' He referred to 'the pain and suffering that you will experience first hand.' He listed 10 things that he wanted her to do, including visit him in jail, bring their three

3

sons to visit him, and accept his phone calls. In another letter, defendant told Carie, 'you won't be cutting hair for a living. Not for a long time.' In yet another letter, he stated, 'I can visualize you, and I can see you getting your butt kicked, broken bones, an ambulance, the hospital, visitors, et cetera.'

"Paul Sampognaro was in jail at the same time as defendant. Defendant spoke to him about Carie and said that '[h]e wanted her beat up.' Defendant indicated that he wanted Sampognaro to find a female to beat up Carie. Defendant specified what he wanted done to Carie by drawing a picture. The document specified seven things that defendant wanted done to Carie, including hitting her on the back, crushing her left hand, breaking her left knee, and breaking her ankle. Defendant further specified that he wanted Carie's purse taken. He offered dirt bikes in exchange for the performance of those acts. Sampognaro felt that defendant was 'very serious.'

"Bobby Santana was also in jail at the same time as defendant. He watched defendant prepare the picture that specified what injuries he wanted caused to Carie. Defendant told him, 'that's what I want done.' Defendant specified that Santana was to perform the acts at Carie's apartment, and that he was to take photographs documenting the injuries. Defendant handed the picture to Santana and asked if he could 'do something like this.' When Santana said no, defendant asked if Santana had any friends that would do it. Santana said he would check and see. Defendant subsequently left a map on Santana's bed that showed where Carie lived and explained how to get there and where to park. Santana described defendant as 'real serious about it.'

"After defendant left the jail for prison, he sent a letter to Santana stating, 'I want that taken care of ASAP. . . . [Y]ou got to make it come together, please.' The letter contained additional instructions, including the directive that Santana was 'to do serious bodily harm to [Carie's] groin area.'

"Defendant was charged, by amended information, with solicitation to commit assault with a deadly weapon or by means of force likely to cause great bodily injury.

4

(§ 653f, subd. (a).) The amended information alleged that defendant had two prior 'strike' convictions (§ 1170.12) and that defendant had served three prior prison terms (§ 667.5, subd. (b)).

"At trial, several men who had been in jail with defendant testified on his behalf. Gary Loss testified that defendant was disappointed about the infrequency of Carie's visits. Defendant asked Loss to talk to Carie about bringing their children in for more visits. Defendant also asked inmate Michael Chambers to try to find Carie and encourage her to visit defendant more often. Justin Raby testified that defendant spoke to him about Carie. Defendant stated, 'I should break her legs and . . . her cunt muscle.' However, Raby believed defendant was just 'letting off steam' because defendant 'didn't seem like he was serious.' Raby never heard defendant ask anyone to hurt Carie.

"Defendant himself denied that his letters to Carie contained any threats of physical harm. He denied that he had talked to other jail inmates about possibly hurting Carie. He admitted he told Santana that he would 'like to see something . . . happen to her,' but asserted that he had been merely 'venting.' He also admitted that he drew the picture specifying the harm he wanted done to Carie because he thought he 'could have somebody beat her up or something.' However, he had no one in mind and drew the picture simply as 'a way of releasing anger.' He said he did not know why he put the picture on Santana's bed.

"The jury convicted defendant, as charged, of solicitation to commit assault with a deadly weapon or by means of force likely to cause great bodily injury. (§ 653f, subd. (a).) In a bifurcated proceeding, the trial court found true both 'strike' allegations. (§ 1170.12.) The prosecution declined to prove the prior prison term allegations. (§ 667.5, subd. (b).) The trial court imposed a sentence of 25 years to life."

### C.    *Petition for Resentencing*

On May 17, 2013, defendant filed a petition for resentencing, pursuant to section 1170.126, subdivision (b). On May 20, 2013, "[a]fter an initial review of the

petition and the case file," the trial court issued an order setting the case for a hearing "to determine whether [defendant] meets the minimum requirements for resentencing." The trial court appointed the Public Defender to represent defendant.

The People filed opposition, attaching transcripts and exhibits from defendant's trial as well as ballot information from Proposition 36. The People argued that defendant was ineligible for relief because "[d]uring the commission of" his original offense, he "intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) The People also argued that it was not necessary for them to have pleaded and proved, at the time of the underlying conviction, that defendant intended to cause great bodily injury to another person during the commission of the offense.

Defendant filed points and authorities in support of his resentencing petition. He argued that the jury did not find that he intended to inflict great bodily injury on anyone "[d]uring the commission of" that offense. (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) He argued that the Legislature did not intend to exclude from the Reform Act persons who committed solicitation of crimes, other than solicitation of murder. Defendant further argued that the Reform Act "contains a specific pleading and proof requirement," and that in 1999, the prosecution did not plead or prove that defendant intended to cause great bodily injury.

A hearing on defendant's resentencing petition was held on August 30, 2013. Defendant reiterated the arguments made in his points and authorities, including his contention that the resentencing scheme contains a "pleading and proof requirement."

The People argued that they could not, at the time of the underlying prosecution, have "alleged that his crime was soliciting [with] intent to commit great bodily injury," since there is "no such crime for that" and "no such enhancement for that, even today." The People argued that the record of the underlying conviction was "abundantly clear that [defendant] intended for his victim to suffer great bodily injury."

6

The trial court issued a written decision on November 12, 2013, concluding that defendant was ineligible for resentencing. The trial court found that "crimes where a person seeks to have another inflict great bodily injury upon someone" were still subject to life sentences and that defendant did intend to cause great bodily injury when he solicited someone to commit assault with a deadly weapon. The trial court further found that the People were not required to have pleaded and proved that defendant intended to cause great bodily injury at the time of the underlying prosecution.

The trial court cited three reasons for its conclusion that there was no pleading and proof requirement as to disqualifying factors in resentencing proceedings. First, the pleading and proof provision of the Reform Act is not contained in section 1170.126 but "only in the sections directly concerned with defendants currently prosecuted and sentenced under the revised three-strikes law," i.e., section 667 and section 1170.12. The trial court noted that the voters and Legislature could have included a pleading and proof requirement in section 1170.126 if they wanted such a requirement to apply in resentencing proceedings.

Second, the trial court found that a pleading and proof requirement did not need to be implied under the resentencing statute, since defendant was not facing the possibility of an increased sentence but rather a possible earlier release.

Third, the trial court found that "interpreting the statute to demand a pleading and proof requirement would lead to an absurd result . . . ." The court noted that in light of the Reform Act, the People can now plead and prove disqualifying factors such as the intent to cause great bodily injury, but that the People could not have pleaded and proved "a disqualifying factor that did not exist until this revised legislation."

Finally, the trial court noted that the Reform Act explicitly anticipates that the trial court will review the record of the prior conviction in determining whether to resentence a defendant at the dangerousness phase. (See § 1170.126, subd. (g).) The court found

7

"no logical justification to conclude that the court cannot initially review the very same information" when determining a defendant's eligibility.

## III.   DISCUSSION

Defendant contends the trial court erred by concluding that he was ineligible for resentencing because he intended to cause great bodily injury during the commission of his solicitation offense, since that fact "was not pled and proved in the proceedings that resulted in the current sentence." The Attorney General contends there is no such pleading and proof requirement in section 1170.126.[2]

Several published cases have held that the Reform Act does not contain a pleading and proof requirement with respect to factors that disqualify defendants from resentencing, including *People v. White* (2014) 223 Cal.App.4th 512 (*White*) (Court of Appeal, Fourth District, Division One), *People v. Osuna* (2014) 225 Cal.App.4th 1020 (*Osuna*) (Court of Appeal, Fifth District), *People v. Blakely* (2014) 225 Cal.App.4th 1042 (Court of Appeal, Fifth District), *People v. Elder* (2014) 227 Cal.App.4th 1308 (Court of Appeal, Third District), and *People v. Brimmer* (2014) 230 Cal.App.4th 782 (Court of Appeal, Fourth District, Division Two). We agree with the analysis in these cases.

The Reform Act contains a pleading and proof requirement as to "an initial sentencing for a current offense." (*Osuna, supra,* 225 Cal.App.4th at p. 1033.) Section 1170.12, subdivision (c)(2)(C) provides: "If a defendant has two or more prior serious and/or violent felony convictions . . . that have been pled and proved, and the current offense is not a felony described in paragraph (1) of subdivision (b) of this section, the defendant shall be sentenced pursuant to paragraph (1) of subdivision (c) of this section, *unless the prosecution pleads and proves*" one of four disqualifying factors. (Italics added; see also § 667, subd. (e)(2)(C).) One of the four disqualifying factors is

---

[2] Denial of a petition to recall a sentence is appealable. (*Teal v. Superior Court* (Nov. 6, 2014, S211708) ___ Cal.4th ___ [2014 Cal. Lexis 10481].)

8

that "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subdivision (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

The Reform Act does not contain a similar explicit pleading and proof requirement "in connection with the procedure for determining whether an inmate already sentenced as a third strike offender is eligible for resentencing . . . ." (*Osuna, supra,* 225 Cal.App.4th at p. 1033.) Section 1170.126, subdivision (e) provides: "An inmate is eligible for resentencing if: [¶] . . . [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."

Despite the absence of a pleading and proof requirement in the resentencing provisions, defendant argues that "a fair reading" of the above provisions "compels a conclusion" that the pleading and proof language of section 1170.12, subdivision (c)(2)(C) applies to the disqualifying factors referenced in section 1170.126, subdivision (e)(2).

Defendant first quotes section 1170.126, subdivision (a), which provides: "The resentencing provisions under this section and related statutes are intended to apply exclusively to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence." He contends, "The plain import of this statement of voter intent is that the determination of eligibility for resentencing under section 1170.126 is intended to be based on the same provisions of the Reform Act applicable to new offenders . . . ." Defendant reasons that since a pleading and proof requirement applies to new offenders, the voters must also have intended such a requirement to apply to inmates already serving third strike sentences.

9

We are not persuaded that the statement of voter intent in section 1170.126, subdivision (a) makes all of the procedural requirements of sections 667 and 1170.12 applicable to resentencing petitions. In fact, the Reform Act explicitly distinguishes between the procedures applicable to resentencing and the procedures applicable prospectively, to defendants who are being sentenced for a new offense. "Under the *prospective* part of the Act, a defendant whose third strike is not a serious or violent felony shall receive a second strike sentence 'unless the prosecution pleads and proves' any of the four exceptions. (Pen. Code, §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) In contrast, under the *retrospective* part of the Act, after a defendant petitions for resentencing, 'the court shall determine' if any of the exceptions apply. (Pen. Code, § 1170.126, subd. (f).)" (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1298, fn. 21.) "[T]he pleading and proof requirement plainly is a part of only the *prospective* part of the Reform Act, which governs the *sentencing* of a *defendant* with 'two or more prior serious and/or violent felony convictions' who has suffered a third felony conviction; it is *not* a part of section 1170.126, the *retrospective* part of the Reform Act that governs a petition for *resentencing* brought by an *inmate* already serving a life sentence under the Three Strikes law." (*White, supra,* 223 Cal.App.4th at p. 527.)

Defendant next notes that he is not literally serving a sentence for one of "the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e)(2).) The referenced statutory provisions do not list the offense of solicitation and they do not list only offenses; the referenced statutory provisions also list facts relating to an offense: "During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) Defendant contends

10

that this particular provision "can be construed as describing an 'offense' under section 1170.126, subdivision (e)(2), only if it is read together with the pleading and proof language to which clause (iii) is connected . . . ."

We do not agree that the pleading and proof requirement of section 1170.12, subdivision (c)(2)(C), which applies prospectively, is incorporated into the resentencing provisions of section 1170.126, subdivision (e)(2). While section 1170.12, subdivision (e)(2) "expressly cross-references 'clauses (i) to (iii), inclusive' of [sections] 667(e)(2)(C) and 1170.12(c)(2)(C), nothing in the language of section 1170.126(e)(2) or of any of the other subdivisions of section 1170.126 governing an inmate's petition for resentencing relief under the Reform Act references the plead-and-prove language." (*White, supra,* 223 Cal.App.4th at pp. 526-527.)

Defendant next contends we must interpret section 1170.126 in a manner that avoids constitutional problems. He argues that to the extent section 1170.126, subdivision (e)(2) is ambiguous as to whether it incorporates the pleading and proof requirements of section 1170.12, subdivision (c)(2)(C), interpreting the Reform Act as permitting "judicial factfinding about the nature of prior convictions" would be "constitutionally dubious."

However, we find no ambiguity as to whether section 1170.126, subdivision (e)(2) incorporates the pleading and proof requirements of section 1170.12, subdivision (c)(2)(C). As explained above, the Reform Act explicitly distinguishes between the procedures applicable to resentencing and the procedures applicable to defendants who are being sentenced for a new offense, and section 1170.126, subdivision (e)(2) only "expressly cross-references 'clauses (i) to (iii), inclusive' of [sections] 667(e)(2)(C) and 1170.12(c)(2)(C)," not any other provisions of those statutes. (*White, supra,* 223 Cal.App.4th at p. 526.)

Defendant claims that the Reform Act should be broadly and liberally construed to promote its goals, and that "an interpretation of section 1170.126 which includes the

11

'pleading and proof' requirement for the resentencing exclusions clearly promotes the remedial goals of the initiative." However, the goals of the Reform Act included ensuring that " '*dangerous criminals* serve their full sentences' " (*Osuna, supra,* 225 Cal.App.4th at p. 1037), and the Reform Act explicitly included, as a factor disqualifying an inmate from resentencing, the inmate's "mere intent, during commission of the current offense, to cause great bodily injury to another person" (*id.* at p. 1036). We are not persuaded that in order to effectuate the remedial purposes of the Reform Act, facts that disqualify an offense from resentencing eligibility must have been pleaded and proved in a prior proceeding, rather than determined by a judge at a resentencing eligibility proceeding.

Although reducing sentences would save taxpayer money, we do not agree with defendant that this is a sufficient reason to impose a pleading and proof requirement on resentencing disqualification criteria. "It is clear the electorate's intent was not to throw open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but only to those who were perceived as nondangerous or posing little or no risk to the public." (*Osuna, supra,* 225 Cal.App.4th at p. 1038.) As noted above, the electorate felt that an inmate was dangerous to the public if he or she had the "mere intent, during commission of the current offense, to cause great bodily injury to another person." (*Id.* at p. 1036.)

Defendant next invokes "the 'rule of lenity' " to support his interpretation of section 1170.126, subdivision (e)(2). However, the rule of lenity "applies ' "only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule." ' [Citation.]" (*People v. Manzo* (2012) 53 Cal.4th 880, 889.) As stated above, we find no ambiguity as to whether section 1170.126, subdivision (e)(2) incorporates the pleading and proof requirements of section 1170.12, subdivision (c)(2)(C).

In sum, we conclude that, where a defendant was sentenced under the Three Strikes law prior to the Reform Act, a trial court may deny resentencing relief under section 1170.126, subdivision (e)(2) if it finds the defendant "intended to cause great bodily injury" during the commission of his or her original offense (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)), even if the accusatory pleading did not allege that the defendant intended to cause great bodily injury during the commission of that offense.

## IV.    DISPOSITION

The order denying defendant's petition to recall his sentence (Pen. Code, § 1170.126) is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:


_____

ELIA, ACTING P.J.


_____

MIHARA, J.

| | |
|---|---|
| Trial Court: | Monterey County Superior Court |
| | Superior Court No.: SM110568 |
| | |
| Trial Judge: | Hon. Timothy P. Roberts |
| | |
| Attorneys for Defendant and Appellant: David Chubbuck | Joseph Courtney Shevelson |
| | Sixth District Appellate Program |
| | |
| Attorney for Plaintiff and Respondent: The People | Allan Yannow |
| | Office of the Attorney General |