Filed 7/8/16  P. v. Winn CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RONNIE WINN,<br><br>        Defendant and Appellant. | A144071<br><br>(Solano County<br>Super. Ct. No. VC142750) |

Ronnie Winn appeals from an order denying his petition for resentencing under Proposition 36, also known as the Three Strikes Reform Act of 2012 (Reform Act; Pen. Code, § 1170.126 et seq.).[1]  He contends the trial court violated his constitutional right to a jury trial because (1) the court relied on its own findings of the nature of the commitment offense to declare him ineligible for resentencing; (2) the prosecutor did not plead and prove the facts that allegedly rendered him ineligible; and (3) the court's finding that he intended to cause great bodily injury in perpetrating the commitment offense was inconsistent with the jury's verdict.  In his reply brief, Winn contends the order must be reversed because the court found an intent to cause great bodily injury by a preponderance of the evidence rather than beyond a reasonable doubt.

We will vacate the order and remand for the trial court to determine Winn's eligibility for resentencing under the standard of beyond a reasonable doubt and, if necessary, whether his resentencing would pose an unreasonable risk of danger by a preponderance of the evidence.

---

[1]     All statutory references are to the Penal Code.

1

# I. FACTS AND PROCEDURAL HISTORY

Winn was charged with murder and battery after the death of his victim, James Rendleman, whom he had kicked and "stomped." For purposes of sentencing, it was alleged that Winn had suffered two prior felony strikes and served two prior prison terms. A jury thereafter convicted Winn of involuntary manslaughter (§ 192, subd. (b)) and misdemeanor battery (§ 242), and the allegations of his prior strike convictions and the prior prison terms were found to be true. The court sentenced Winn under the Three Strikes Law to 25 years to life, plus sentence enhancements of one year for each of two prior prison terms. (§§ 667, subd. (a)(1), 667.5, subd. (b), 1170.12.)

In May 2002, this court affirmed the judgment of conviction but vacated one of the two sentence enhancements, reducing Winn's total sentence to 26 years to life.

In our opinion affirming the conviction, we described the facts of the case as follows, based on the record. Winn walked into the apartment of his victim, James Rendleman, uninvited. He argued with Rendleman over an $8 debt, and after he was paid only $5, became embroiled in a fight in which he "proceeded to beat, kick, and 'stomp' the head of Rendleman, a man of about 60, causing head and brain injuries that resulted in his death a month later." Winn also struck another individual in the face, grabbed him by the throat, raised him off the floor by his neck, and choked him until he began to lose consciousness. Winn admitted kicking Rendleman, although not in the head, and claimed he acted in self-defense. Rendleman's face was bloody and bore the impression of the sole of a shoe; a forensic pathologist opined that this shoeprint was consistent with Rendleman being "stomped." A witness confirmed that Winn kept stomping Rendleman in the head, kicking him in the side, and "grinding" his shoe into the face of Rendleman, who was hurt badly, "gurgling," and having trouble breathing.

In January 2013, after the enactment of the Reform Act, Winn filed a petition for resentencing as a second strike offender. The trial court initially ruled Winn eligible for resentencing and ordered a hearing to decide whether Winn should be resentenced; the prosecution filed a motion for reconsideration.

After further briefing and argument, the trial court issued its written order in October 2014, finding Winn ineligible for resentencing under Proposition 36 and denying his petition, on the ground that during the commission of his offense Winn intended to cause great bodily injury to his victim.

This appeal followed.

## II. DISCUSSION

As mentioned, Winn contends the trial court violated his constitutional right to a jury trial in ruling him ineligible for resentencing under the Reform Act on the ground he intended to cause great bodily injury during the commission of his offense, arguing that the court may not make such a finding, the prosecutor did not plead or prove those facts, and the finding was contrary to findings of the jury. He also challenges the standard of proof the court applied. We briefly summarize the Reform Act and the court's findings, and then turn to Winn's arguments.

### A. The Reform Act

In November 2012, voters approved the Reform Act, which amended sections 667 and 1170.12 and added section 1170.126.

Previously, the Three Strikes Law had provided that an offender with two or more prior qualifying felony "strike" convictions was subject to an indeterminate life sentence if convicted of any new felony offense. (See *People v. Flores* (2014) 227 Cal.App.4th 1070, 1073.) Under the Reform Act, however, life sentences are now reserved for cases where "the third felony is *itself* a serious or violent felony." (*Id.* at pp. 1073–1074; see § 667, subd. (e)(2)(C); § 1170.12, subd. (c)(2)(C).)

In addition to this prospective provision, the Reform Act contains a retrospective provision, relevant here, which establishes a procedure for "persons presently serving an indeterminate term of imprisonment" under the former Three Strikes Law, and "whose sentence under this act would not have been an indeterminate life sentence," to seek resentencing by filing a "petition for a recall of sentence." (§ 1170.126, subds. (a), (b); see *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1292 (*Kaulick*).)

3

The petitioner is eligible for resentencing if: (1) he or she is serving an indeterminate term of life imprisonment imposed under the Three Strikes Law for a conviction of a felony that is not defined as serious and or violent (see §§ 667.5, subd. (c) & 1192.7, subd. (c)); (2) the *current sentence was not imposed for a disqualifying offense* specified in section 667, subdivision (e)(2)(C), or section 1170.12, subdivision (c)(2)(C); and (3) the petitioner has no prior convictions for offenses listed in section 667, subdivision (e)(2)(C)(iv), and section 1170.12, subdivision (c)(2)(C)(iv). (§ 1170.126, subd. (e).) If the trial court determines that the petitioner satisfies this criteria, then it shall resentence the petitioner as a second strike offender "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

At issue here is whether Winn's third strike sentence was imposed for a disqualifying offense as stated in section 1170.126, subdivision (e)(2). That provision states that an inmate is eligible for resentencing only if "[t]he inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e)(2).) Section 667, subdivision (e)(2)(C)(iii) and section 1170.12, subdivision (c)(2)(C)(iii) pertain to an offense in which, during its commission, "the defendant used a firearm, was armed with a firearm or deadly weapon, *or intended to cause great bodily injury to another person*." (§ 667, subd. (e)(2)(C)(iii), § 1170.12, subd. (c)(2)(C)(iii). Italics added.)

In short, the question was whether Winn's third strike sentence was imposed for an offense in which he intended to cause great bodily injury to another person.

B. The Trial Court's Ruling

In denying Winn's petition for resentencing, the court rejected his argument that the prosecution needs to have pleaded and proved any factor that disqualifies a petitioner from resentencing, including the fact that he intended to cause great bodily injury. The court further ruled that Winn had no Sixth Amendment right to a jury determination of

4

his resentencing eligibility, and a trial court may rely on the petitioner's record of conviction in determining eligibility for resentencing, including the appellate court's summary of the facts and evidence. On this record, the court concluded that the appellate decision in this case supported a finding that Winn intended to cause great bodily injury during the commission of his involuntary manslaughter offense. In addition, the court ruled, this finding was not inconsistent with the jury's verdict: the jury did not necessarily find that Winn lacked an intent to cause great bodily injury in finding him not guilty of murder; moreover, the instructions for involuntary manslaughter informed the jury that the killing would be unlawful if done during the commission of an unlawful act (in this case, a violation of section 242) that is dangerous to human life under the circumstances of its commission.

C. The Trial Court Could Properly Determine the Nature of Winn's Offense

Winn contends the court erred because (1) a trial court cannot examine the record of conviction to determine if the petitioner is eligible for resentencing and (2) a fact cannot render a petitioner ineligible for resentencing unless it was pleaded and proved by the prosecutor. We join the many courts that have rejected these arguments.

1. Trial Court's Determination of Eligibility

It is firmly established that the trial court, in deciding whether a petitioner is eligible for resentencing under the Reform Act, is authorized to examine the petitioner's record of conviction to determine whether he or she intended to cause great bodily injury during the commission of the current offense. (E.g., *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1338–1339 (*Bradford*).)

Winn nonetheless argues that cases imposing constitutional limitations on judicial factfinding as to the nature of prior convictions for purposes of *increasing* a sentence (*Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*); *Descamps v. United States* (2013) 133 S.Ct. 2276 (*Descamps*)) also call into question the constitutionality of judicial factfinding as to the nature of a prior conviction for purposes of resentencing under the Reform Act, since the factfinding may render a defendant "ineligible for a dramatic sentence reduction to which he would otherwise be entitled, i.e., the finding of those facts

5

increases defendant's sentence beyond that to which he is otherwise presumptively entitled." Winn is incorrect.

*Apprendi* provides that "[other] than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra*, 530 U.S. at p. 490.) And *Descamps* precludes a trial court from examining court documents, or otherwise looking beyond the elements of an offense, in deciding whether a prior conviction meets the requirements of a sentence enhancement statute. (*Descamps*, *supra*, 133 S.Ct. at pp. 2283–2285; see *People v. Wilson* (2013) 219 Cal.App.4th 500, 516 ["A court may not impose a sentence above the statutory maximum based on disputed facts about prior conduct not admitted by the defendant or implied by the elements of the offense."]; *People v. Saez* (2015) 237 Cal.App.4th 1177, 1207.)

As the appellate courts of this state have repeatedly ruled, however, *Apprendi* and *Descamps* do not apply to factual determinations affecting a petitioner's eligibility for resentencing under the Reform Act, because section 1170.126 is not a sentence *enhancing* provision, but a sentence *ameliorating* provision that can only decrease a defendant's sentence. (*People v. Brimmer* (2014) 230 Cal.App.4th 782, 805 (*Brimmer*) ["*Apprendi* and the limitations of the Sixth Amendment do not apply to resentencing determinations"]; *Bradford*, *supra*, 227 Cal.App.4th at p. 1336 ["the trial court's determination of facts that affect whether the defendant will be resentenced does not implicate the right to a jury trial as described in the *Apprendi* cases"]; *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1060 (*Blakely*) ["*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the [Reform] Act"]; *Kaulick, supra,* 215 Cal.App.4th at pp.1304–1305 ["[T]he United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws.].)

In reaching this conclusion, *Kaulick* looked to the United States Supreme Court's decision in *Dillon v. United States* (2010) 560 U.S. 817 (*Dillon*). In *Dillon*, a prisoner

6

had sought a reduction in his sentence after the sentencing guideline range for his offense was lowered. (*Id*. at p. 823.) The applicable statute authorized a court to adjust a sentence downward if consistent with applicable policy statements, including that the sentence could not be reduced below the amended range except to the extent the original term was below the original range. (*Id*. at p. 819.) The United States Supreme Court concluded that the limitation imposed by this policy statement was not merely advisory, because the statute did not authorize a plenary resentencing but only a limited adjustment to an otherwise final sentence, and Sixth Amendment rights were not violated by the court's adherence to the limitation. (*Id*. at pp. 826–828.) As relevant here, the court stated: "[The statute] represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines. [¶] Viewed that way, proceedings under [this statute] *do not implicate the Sixth Amendment* right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a [modification downward] proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range." (*Id*. at p. 828. Italics added.) The court in *Kaulick* found this language applicable to the resentencing provision of the Reform Act: "[The resentencing provision] is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues." (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1304–1305.)

Winn insists that *Kaulick*'s reliance on *Dillon* was wrong, because the statutory scheme in *Dillon* only gave a court discretion to lower sentences, while section 1170.126 of the Reform Act redefines the "normative punishment" for a defendant. He adds that, unlike the statute in *Dillon*, "section 1170.126 creates a *new* statutory presumption for a second-strike sentence, which the court must impose unless a defendant is found ineligible, or there is a factual finding of dangerousness. Given this presumption, and

7

unlike the statute at issue in *Dillon*, it necessarily requires " 'plenary resentencing proceedings" ' " at which the court determines whether a defendant is ineligible for the new maximum (second strike) punishment.

Winn is incorrect.  The Reform Act did not automatically change the sentence of individuals who received an indeterminate life sentence for a third strike felony that was not serious or violent.  Those sentences, lawful at the time of imposition, remain lawful today.  The statute merely provides that specified inmates may petition for a reduction in their sentence.  If a petitioner is eligible under the statute, the court "shall" resentence the inmate unless the court in its discretion determines it would be too dangerous.  But there is no way that any judicial factfinding at any stage of the *resentencing* inquiry—whether it be a fact with respect to eligibility or a fact regarding dangerousness—can possibly increase the petitioner's current lawful sentence.  (See *Kaulick, supra*, 215 Cal.App.4th at p. 1303.)  Winn fails to establish error.

2.  <u>No Requirement to Plead and Prove for Resentencing Purposes</u>

Winn acknowledges that he is ineligible for resentencing if his third strike sentence was imposed for an offense listed in section 667, subdivision (e)(2)(C)(iii) or section 1170.12, subdivision (c)(2)(C)(iii), such as a felony during which the defendant intended to cause great bodily injury to another person.  He argues, however, that those statutes require the prosecution to "plead and prove" that the defendant intended to cause great bodily injury in order to obtain a third strike sentence, so, as a corollary, an inmate cannot be ineligible for *resentencing* unless the prosecution had met that requirement.

Winn is incorrect.  The plain language of the statute indicates that the pleading and proof requirement is prospective only.  The Reform Act states that the prosecution must plead and prove the disqualifying factors with respect to the sentencing of a potential third strike defendant; it does not contain such language in the part of the Reform Act pertaining to resentencing.  (*People v. Guilford* (2014) 228 Cal.App.4th 651, 657 ["Nowhere in the resentencing provisions of the [Reform] Act—section 1170.126, subdivision (e), . . . is there any reference to pleading and proof of disqualifying factors. Generally speaking, a pleading and proof requirement will not be implied."]; *People v.*

*Chubbuck* (2014) 231 Cal.App.4th 737, 747 (*Chubbuck*) [while § 1170.126, subd. (e)(2) expressly cross-references § 667, subd. (e)(2)(C)(i)–(iii) and § 1170.12, subd. (c)(2)(C)(i)–(iii), nothing in the language of § 1170.126, subd. (e)(2) or of any of the other subdivisions of § 1170.126 governing resentencing references the plead-and-prove language].) Section 1170.126, subdivision (f) provides that, "Upon receiving a petition for recall of sentence under this section, *the court* shall determine whether the petitioner satisfies the criteria in subdivision (e)," so "[t]here is no provision for the People to plead or prove anything, [and] the burden falls *on the trial court* to make the determination whether a defendant meets the prima facie criteria for recall of sentence." (*Guilford, supra,* 228 Cal.App.4th at p. 657 [when a statute omits a particular provision that was included in a related statute, the intent was that the provision is inapplicable to the provision from which it was omitted].)

Other courts of appeal have agreed that disqualifying circumstances under section 1170.126, subdivision (e) need not be pleaded and proved. (E.g., *Brimmer*, *supra*, 230 Cal.App.4th at pp. 801–803; *Bradford*, *supra*, 227 Cal.App.4th at pp. 1333–1334; *People v. Elder* (2014) 227 Cal.App.4th 1308, 1314–1315; *Blakely*, *supra*, 225 Cal.App.4th at pp. 1057–1059; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1033.)

Winn's arguments to the contrary are unpersuasive. First, he contends it is at least ambiguous whether section 1170.12, subdivision (e)(2) incorporates the pleading and proof requirement, and courts are obligated to construe ambiguity in a penal statute in a manner that avoids constitutional problems. (Citing *People v. Leiva* (2013) 56 Cal.4th 498, 506–507.) However, the court in *Chubbuck* found "*no ambiguity* as to whether section 1170.126, subdivision (e)(2) incorporates the pleading and proof requirements of section 1170.12, subdivision (c)(2)(C)." (*Chubbuck*, *supra*, 231 Cal.App.4th at p. 747. Italics added.) And we reach the same conclusion. Indeed, it makes good sense that the pleading and proof requirement would apply only prospectively, and not to cases where, as here, the prosecutor had no notice of the pleading and proof requirement at the time the prosecutor was selecting which facts to plead and to prove in the earlier proceeding. (See *Bradford, supra*, 227 Cal.App.4th at pp. 1333–1334.)

Next, Winn urges that the pleading and proof requirement must apply to resentencing based on the *Apprendi* and *Descamps* concerns over judicial factfinding. As he acknowledges, however, courts have repeatedly rejected this argument too. (*Bradford*, *supra*, 227 Cal.App.4th at pp. 1334–1335; *Blakely*, *supra*, 225 Cal.App.4th at pp. 1059–1063; *Osuna*, *supra*, 225 Cal.App.4th at p. 1039.)

Lastly, Winn argues in his reply brief that our supreme court has stated that "the parallel structure of the Act's sentencing and resentencing provisions appears to contemplate identical sentences in connection with identical criminal histories, unless the trial court concludes that resentencing would pose an unreasonable risk to public safety." (*People v. Johnson* (2015) 61 Cal.4th 674, 687 (*Johnson*).) Therefore, he urges, the pleading and proof requirement should apply to resentencing as well as to original sentencing.

We disagree. In the first place, the court in *Johnson* made this statement in a different context. The court was deciding whether, for purposes of resentencing, the characterization of an inmate's committing offense as serious or violent depends on the law as of the effective date of Proposition 36 rather than the law when the offense was committed. (*Johnson, supra*, 61 Cal.4th at p. 687.) It also briefly echoed the idea in discussing whether an inmate may be eligible for resentencing on a commitment offense that is neither serious nor violent, despite the presence of another commitment offense that is. (*Id*. at p. 691.) But *Johnson* did not address the issue here: whether, in the context of eligibility for resentencing, the defendant's intent to cause great bodily injury during the court of the offense must have been pleaded and proved.

Furthermore, the equivalence mentioned in *Johnson* arises only to the extent the language of the Reform Act calls for it. Our Supreme Court did not suggest that courts should ignore the statutory language in order to make sure inmates who seek resentencing receive the same sentence as defendants who are sentenced after the Reform Act's enactment, but that those two groups will end up with identical sentences to the extent indicated by the language. Here, the pleading and proof requirement is stated with respect to original sentencing, but not to resentencing. Winn fails to demonstrate error.

10

D. Consistency with Jury Verdict

Winn next contends the court's finding that he intended to cause great bodily injury was inconsistent with the jury's verdicts. On this basis, he argues, the court violated his Sixth Amendment right to a jury trial.

The argument has no merit. Neither the jury's acquittal of Winn on the murder charge, nor its conviction of Winn for involuntary manslaughter, shows that the jury necessarily found Winn lacked an intent to cause great bodily injury to Rendleman when he stomped him to death.

1. Not Guilty of Murder

Murder is the unlawful killing of a human being with malice, express or implied. (§ 187; *People v. Beltran* (2013) 56 Cal.4th 935, 941–942.) In acquitting Winn of murder, therefore, the jury found that he killed Rendleman without malice.

Winn believes it is significant that the jury did not find implied malice, since the jury was instructed that implied malice exists if the killing resulted from an intentional act, the natural and probable consequences of which are dangerous to human life, and the act was "*deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.*" (Italics added. See CALJIC No. 8.11.) He interprets the acquittal to mean that the jury did not believe Winn realized the risk of his actions. (Citing *People v. Cleaves* (1991) 229 Cal.App.3d 367, 378 ["the essential distinction between second degree murder based on implied malice and involuntary manslaughter is the subjective versus objective criteria to evaluate the defendant's state of mind—i.e. if the defendant commits an act which endangers human life without realizing the risk involved, he is guilty of manslaughter, whereas if he realized the risk and acted in total disregard of the danger, he is guilty of murder based on implied malice"].)

Winn then jumps to the conclusion that, by finding Winn guilty of involuntary manslaughter rather than murder, the jury found that "while he engaged in an act that was objectively dangerous, he did not realize or appreciate that risk;" and if Winn did not realize the risk inherent in his acts, he could not have intended to cause great bodily injury.

11

Winn is mistaken. The issue with respect to implied murder is not whether the defendant realized the risk of *great bodily injury*, but whether he realized the risk to *human life*. Plainly, one can realize the risk of, and intend to cause, great bodily injury—a "significant or substantial physical injury" (§ 12022.7, subd. (f))—without appreciating the risk the act poses to *human life*, because not every act that leads to significant or substantial physical injury is dangerous to human life as a natural consequence. To put it more colloquially, Winn could well have thought stomping on Rendleman would hurt him badly, but did not realize it could actually kill him. Winn cites no authority holding that a person cannot, as a matter of law, intend to cause great bodily injury merely because he was unaware his act was so serious as to endanger his victim's life.

Winn points us to authorities indicating that a killing which resulted from an act intended to cause great bodily injury constituted murder. (Citing *People v. Weisberg* (1968) 265 Cal.App.2d 476, 480 [malice for murder exists "where the intent is only to cause serious injury"]; *People v. Teixeira* (1955) 136 Cal.App.2d 136, 151 [malice established where "the force used by appellant was so unreasonable and so wanton as to evidence an intent to inflict death or grievous bodily harm"]; 1 Witkin, California Criminal Law (4th ed. 2012) Crimes Against the Person, §189, at p. 1003 ["An intent to inflict serious injury is sufficient to establish malice aforethought"]; *id.,* §105 at p. 897 [malice includes "an intent to inflict great bodily injury"]; 2 Wharton's Criminal Law (15th Ed. 1994), §139, at p. 246 [malice denotes "various mental states, such as . . . intent to cause great bodily harm"].) But the cited cases merely stand for the proposition that facts indicating the defendant's intent to inflict great bodily injury *may be sufficient to give rise to an inference* that the defendant also realized a risk to human life—that is, there was substantial evidence to support the murder verdict. (*Weisberg supra,* 265 Cal.App.2d at pp. 480–481; *Teixeira, supra,* 136 Cal.App.2d at p. 151.) The cases do not hold that, as a matter of California law, an intent to commit great bodily injury *must* result in a murder conviction even if the jury believes the defendant only intended to cause great bodily harm and did *not* realize the risk to human life. Accordingly, the

12

jury's acquittal on the murder count is not necessarily inconsistent with a finding that Winn intended to cause great bodily injury.

### 2. Guilty of Involuntary Manslaughter

Nor is the jury's finding of guilt as to involuntary manslaughter inconsistent with a finding that Winn intended to cause great bodily injury. The involuntary manslaughter instructions did not require the jury to decide whether Winn had the intent to cause great bodily injury. If anything, the jury's conviction for involuntary manslaughter suggests it found facts that would indeed support a conclusion, beyond a reasonable doubt, that Winn had such an intent.

The jury was instructed on involuntary manslaughter as follows: "Every person who unlawfully kills a human being, without malice aforethought and without an intent to kill, is guilty of the crime of involuntary manslaughter in violation of Penal Code section 192, subdivision (b). [¶] A killing is unlawful within the meaning of this instruction if it occurred: [¶] During the commission of an unlawful act [not amounting to a felony] which is dangerous to human life under the circumstances of its commission. [¶] An 'unlawful act' not amounting to a felony consists of a violation of Penal Code section 242. [¶] The commission of an unlawful act, without due caution and circumspection, would necessarily be an act that was dangerous to human life in its commission. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A human being was killed; and [¶] 2. The killing was unlawful."

The involuntary manslaughter conviction shows that the jury concluded Winn killed Rendleman during the commission of a misdemeanor battery (§ 242)—a battery that was dangerous to human life under the circumstances of its commission. (That is, the *battery* was dangerous to human life, even though Winn did not *appreciate* it was dangerous to human life as required for murder.) Killing during the commission of a battery that was "dangerous to human life" is not inconsistent with a finding that Winn intended to cause great bodily injury.

Winn fails to establish error on this ground.

13

E. *Arevalo*:  Standard of Proof of Ineligibility

In his appellate reply brief, Winn directs us to *People v. Arevalo* (2016) 244 Cal.App.4th 836 (*Arevalo*), which was decided after Winn filed his opening brief.  In *Arevalo*, the defendant had been found guilty of certain offenses, but the court had acquitted him of possession of a firearm by a felon and found not true the allegation that he was armed with a firearm.  On a later resentencing petition under the Reform Act, the court determined he was ineligible, finding by a preponderance of the evidence that he *was* armed with a weapon when he committed the offenses.  (*Id.* at pp. 841–842.)  On appeal, the appellate court ruled that a court's eligibility determinations (as opposed to findings that resentencing would be too dangerous) required a "heightened standard of proof" due to "the substantial amount of prison time potentially at stake for the defendant seeking resentencing, the risk of potential error stemming from the summary and retrospective nature of the adjudication that will be made at the resentencing eligibility proceeding, and the slight countervailing governmental interest given the People's opportunity to provide new evidence at any subsequent dangerousness hearing." (*Id.* at p. 852.)[2]  This heightened standard must be the standard of beyond a reasonable doubt, *Arevalo* concluded, in light of the observation in *Johnson* that identical sentences should be imposed under the resentencing and sentencing provisions of the Reform Act for identical criminal histories.  (*Id.* at p. 853.)  Because the trial court had originally

---

[2]      *Arevalo* distinguished *Kaulick*, which had held that the prosecutor had to prove dangerousness only by a preponderance of the evidence, on the ground that the dangerousness determination is "akin to the usual procedure in which a trial court exercises its discretion to decide whether various sentencing factors warrant a greater or lesser punishment," but the eligibility determination "requires the trial court to make a summary legal finding as to whether the defendant is even eligible for resentencing consideration" in light of the findings at the original trial.  (*Arevalo, supra*, 244 Cal.App.4th at pp. 842, 849.)  *Arevalo* also noted *Osuna*, which held that the preponderance standard applies to eligibility issues as well as to dangerousness issues because of the inapplicability of the Sixth Amendment.  (*Osuna, supra*, 225 Cal.App.4th at p. 1040.)  We construe *Arevalo* to impose the beyond a reasonable doubt standard not because of the Sixth Amendment, but because of its statutory construction of the Reform Act, a matter *Osuna* did not address.

14

acquitted the defendant on the weapon possession charge and found the allegation of being armed with a firearm not true, it could not find at resentencing that he *was* armed with a firearm beyond a reasonable doubt, and the order denying resentencing was accordingly reversed. (*Id*. at pp. 853–854.)

Winn contends that, under *Arevalo*, the order denying resentencing in this case should also be reversed, because there is no indication in the record that the court made the determination that Winn intended to cause great bodily injury beyond a reasonable doubt. To the contrary, the trial court stated, "[a] trial court need only find the existence of a disqualifying factor by a preponderance of the evidence." (Citing *Osuna, supra*, 225 Cal.App.4th at p. 1040.) Furthermore, in concluding that our decision affirming Winn's conviction supported the finding that Winn intended to cause great bodily injury, the court did not indicate it was making that finding beyond a reasonable doubt.

Because this issue was first raised in Winn's appellate reply brief, we gave respondent the opportunity to address the issue in supplemental briefing. Having considered respondent's submission, we will vacate the order denying Winn's petition for resentencing and remand the matter to the trial court to decide whether, beyond a reasonable doubt, Winn intended to cause great bodily injury during the commission of his involuntary manslaughter offense. If the court concludes beyond a reasonable doubt that he did, the order denying Winn's petition will be reinstated. If the court does not conclude beyond a reasonable doubt that Winn harbored such an intent, the court shall proceed to decide whether, by a preponderance of the evidence, resentencing Winn would pose an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f); *Arevalo, supra*, 244 Cal.App.4th at p. 854.)

By this ruling, we do not suggest that we would follow *Arevalo* under any facts or circumstances other than those in this particular case.

### III. DISPOSITION

The order denying Winn's petition for resentencing is vacated. The matter is remanded for further proceedings consistent with this opinion, including a determination

of whether, beyond a reasonable doubt, Winn intended to cause great bodily injury during the commission of his involuntary manslaughter offense.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.